UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

UNITED STATES OF AMERICA,

              v.                                        **MEMORANDUM AND ORDER**
                                                    23-CR-490 (WFK)

SERGO SIMONYAN,

               Defendant.

--------------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On May 9, 2025, Sergo Simonyan ("Defendant") pled guilty to one count of conspiracy to commit odometer fraud in violation of 49 U.S.C. § 32703(4). Plea Agreement ("Plea") ¶ 1, ECF No. 89; *see generally* Indictment, ECF No. 1.[1]  The Court now sentences Defendant and provides a complete statement of reasons, under 18 U.S.C. § 3553(c), of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to eighteen (18) months' incarceration; one (1) year of supervised release with both the standard conditions and special condition of supervision; and a $100.00 mandatory special assessment.

## I.    Background

### A.    Factual Background

At numerous points between June 2022 and November 2023,[2] Defendant assisted his

neighbor Moris Nozadze ("M. Nozadze") and M. Nozadze's son, Daniel Nozadze ("D.

Nozadze," together with Defendant and M. Nozadze, "Defendants"), in operating a business

where they manipulated or rolled back vehicle odometer mileage readings in exchange for

payment. Presentence Investigation Report (the "PSR") ¶¶ 6–7, ECF No. 113. Vehicle

---

[1] Citations are to the docket in *United States v. Nozadze, et al.*, 23-CR-490. Page pincites refer to the ECF page numbers assigned to a filing, where available, and where no ECF heading is present, to the page numbers listed in the original filing.

[2] The U.S. Probation Office ("Probation") indicates Defendant participated in the scheme between January 2012 and November 2023. PSR ¶ 6. However, Defendant states he only participated between June 2022 and November 2023, a fact the Government concedes. *See* Def. Sent'g Mem. at 4, ECF No. 128; Gov't Sent'g Mem. at 5 n.2, ECF No. 129.

odometers are instruments used for measuring and recording the distance or mileage driven of a vehicle. *Id.* ¶ 4. Congress determined "that . . . buyers of motor vehicles rely heavily on the odometer reading as an index of the condition and value of a vehicle"; buyers are "entitled to rely on the odometer as an accurate indication of the mileage of the vehicle" that assists in "deciding on the safety and reliability of the vehicle[.]" 49 U.S.C. § 32701(a); *see also* PSR ¶ 4.

Defendant and D. Nozadze personally manipulated or rolled back odometers in exchange for payment. PSR ¶ 7. Specifically, Defendants manipulated odometers by one of two (or both) methods: (1) decreasing the mileage already shown on the odometer, or (2) installing devices known as "mileage blockers, "mileage stoppers," or "speed filters" (collectively, "Mileage Blocker Devices") to disable odometers and/or reduce the rate at which they accumulated mileage. *See id.* ¶¶ 6–7; Gov't Sent'g Mem. at 1–2, ECF No. 129.

Records from Bank of America regarding Fargo Auto Sales—as well as from Zelle, Block Inc., Venmo, and three undercover transactions—indicate at least 1,159 rollbacks or Mileage Blocker Device installations were conducted between January 2012 and November 2023.[3] *Id.* ¶ 8. The Government provided a conservative estimated loss totaling $927,200.00. *Id.* The U.S. Probation Office ("Probation") stated it "does not have specific information with respect to the make and model of the vehicles, or the specific details of the various transactions" involved in Defendants' odometer manipulation business and so it "cannot compute an independent loss figure in this case[.]" *Id.* ¶ 8 n.2. Instead, Probation relied on an estimate prepared by the Government. *Id.* The Government "advised that courts in many districts have accepted a loss amount of $4,000[.00] or more per vehicle in odometer fraud cases" and so the Government "attributed a $4,000 value inflation to each of the 1,159 vehicle transactions

---

[3] It is unclear how many transactions were conducted between June 2022 and November 2023, the relevant period when Defendant participated in the scheme. *See generally* PSR.

involved in the scheme." *Id.* To account for "potential overcounting" and "overestimate[s]," the Government reduced its estimate. *Id.*

### B.    Procedural History

On November 28, 2023, a U.S. Grand Jury returned a six-count indictment (the "Indictment") against Defendants asserting the following: Count One against Defendant, M. Nozadze, and D. Nozadze alleged conspiracy to commit odometer fraud in violation of 49 U.S.C. § 32703(4); Count Two against D. Nozadze alleged installation of a mileage blocker device in violation of 49 U.S.C. § 32703(1); Count Three against M. Nozadze alleged installation of a mileage blocker device in violation of 49 U.S.C. § 32703(1); Count Four against Defendant alleged installation of a mileage blocker device in violation of 49 U.S.C. § 32703(1); Count Five against D. Nozadze alleged tampering with a motor vehicle odometer in violation of 49 U.S.C. § 32703(2); and Count Six against Defendant alleged tampering with a motor vehicle odometer in violation of 49 U.S.C. § 32703(2). Indictment ¶¶ 12–23.

On December 13, 2023, Homeland Security and Investigations agents arrested Defendant. PSR ¶ 10. On May 9, 2025, Defendant pled guilty to Count One of the Indictment. Pursuant to the Plea, Defendant agreed not to file an appeal or otherwise challenge his sentence if the Court imposed a term of thirty-six (36) months' incarceration or below. Plea ¶ 4. Pursuant to the Plea, the Government agreed "no further criminal charges will be brought against [Defendant] for, between January 2012 and November 2023, (1) conspiring to commit odometer fraud, as charged in Count One of the Indictment; (2) tampering with motor vehicle odometers, as charged in Count Six of the Indictment, or (3) installing mileage blocker devices, as charged in Count Four of the Indictment[.]" *Id.* ¶ 5(i). Additionally, the Government agreed to move to dismiss the remaining counts of the Indictment as to Defendant at the time of sentencing. *Id.*

On February 19, 2025, and March 21, 2025, M. Nozadze and D. Nozadze respectively pled guilty to Count One of the Indictment. M. Nozadze Plea Agreement ¶ 1, ECF No. 72; D. Nozadze Plea Agreement ¶ 1, ECF No. 82.

On January 13, 2026, the Court sentenced M. Nozadze to thirty months' incarceration to be followed by one year of supervised release with both the standard and special conditions of supervision, and a $100.00 mandatory special assessment. *See* M. Nozadze Sent'g Mem. and Order at 1, ECF No. 116.

On January 29, 2026, the Court sentenced D. Nozadze to time served to be followed by one year of supervised release with both the standard and special conditions of supervision, 100 hours of community service, and a $100.00 mandatory special assessment. *See* D. Nozadze Sent'g Mem. and Order at 1, ECF No. 123.

## II.    Legal Standard

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553. Together with 18 U.S.C. § 3553, the United States Federal Sentencing Guidelines (the "Sentencing Guidelines," or "Guidelines," or "U.S.S.G.") operate as the "starting point and . . . initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a trial court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state—in open court—the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.* The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*,

4

08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense. *See* 18 U.S.C. § 3553(a). The Court now addresses each factor in turn.

## III.    Analysis

### A.    The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

#### 1.    *Family and Personal Background*

Defendant was born on September 15, 1985 in the country of Georgia to the marital union of his father Georgi Simonyan and his mother Susana Simonyan (née Mikrtichyan). PSR ¶ 37. Prior to immigrating to the United States, Defendant and his family resided in Tbilisi, Georgia where they lived in a lower-middle income neighborhood which was "safe and free of crime." *Id.* ¶ 39. Defendant's father worked in a fish market and his mother was a homemaker. *Id.* Defendant described a "generally good childhood, devoid of abuse of any kind." *Id.*

Defendant grew up during the Georgian Civil War, which took place from 1991 to 1993. *See id.* He recalls observing military personnel driving tanks through his neighborhood streets.

5

*Id.* Defendant did not report his parents experiencing issues with the military, but stated his family "was still impacted by the effects of the war." *Id.* For example, Government restrictions were placed on the use of electricity, so Defendant's family only had access to electricity for two hours per day. *Id.* Defendant's home did not have heat for several years during the winter months and so he and his family "had to wear layers of clothing in bed to keep warm[.]" *Id.* They also had to warm water using a fire outside in order to shower. *Id.*

Despite these conditions, Defendant reported his needs were always met and his parents made sure he was always "well cared for." *Id.* Defendant's parents always made sure he and his sister felt safe. *Id.*

In September 1999, Defendant and his father immigrated to the United States, residing in Harrisburg, Pennsylvania for six months before moving to Brooklyn, New York. *Id.* ¶ 40. Defendant reported his life in Brooklyn "was difficult at first because of the language barrier[,]" but he later took classes to learn English. *Id.* Records indicate Defendant became a naturalized U.S. citizen on January 24, 2020. *Id.*

Defendant's father is sixty-five years of age and currently lives in Brooklyn, New York. *Id.* ¶ 37. After immigrating to the United States, Defendant's father worked in construction and later as a home attendant before retiring. *Id.* Defendant's father experiences chronic cardiac, ankle, and knee issues but has received corrective surgeries. *Id.* Defendant's mother is sixty-four years of age and resides with Defendant's father in Brooklyn, New York. *Id.* Defendant's mother works as a home attendant and is in good health. *Id.* Defendant supports his parents financially by "assisting with their monthly expenses[.]" *Id.* Defendant maintains a "close relationship" with his parents, both of whom are aware of the instant case and remain supportive. *Id.*

Defendant has one sister, Yana Simonyan, who is thirty-seven years of age and also resides in Brooklyn, New York. *Id.* ¶ 38. Defendant's sister works as a nurse practitioner and is in good health. *Id.* Defendant shares a "close relationship" with his sister who is aware of the instant case and remains supportive. *Id.*

On July 20, 2013, Defendant married Yuliya Simonyan who is thirty-seven years of age. *Id.* ¶ 41. She resides in Brooklyn, New York and works as a physician's assistant. *Id.* Defendant's wife is in good health. *Id.* Defendant and his wife have three children together: Emily Simonyan, age nine, Elliana Simonyan, age five, and Elizabeth Simonyan, age two. *Id.* All Defendant's children reside with his wife, are enrolled in school or daycare, and are in good health. *Id.* Defendant's wife described him as a "kind and loving husband and father," noting "he has a very close relationship with their three daughters." *Id.* ¶ 42. Defendant plays an "active role" in the children's lives and helps care for them in the evenings while his wife works. *Id.* Although Defendant's wife reported they "rel[y] on [his] presence[,]" Defendant's parents live close by and his mother in particular spends a lot of time at their home helping with the children. *Id.* Defendant's wife was surprised to learn of his involvement in the instant case, but he was honest about his involvement and she remains supportive. *Id.* Defendant's children, however, are not aware of the instant case given their young age. *Id.* ¶ 41.

In addition to the above, the Court has considered the letters of support Defendant's friends and family have submitted on his behalf. *See generally* Def. Sent'g Mem, Ex. A, ECF No. 128.

2.        *Educational and Employment History*

Defendant attended school in Tbilisi, Georgia, and completed the equivalent of a ninth-grade education before immigrating to the United States. PSR ¶ 51. He did not attend school in

the United States, but he is fluent in the English, Georgian, Russian, and Armenian languages.
*Id.*

Prior to 2012, Defendant worked at a restaurant as a bus boy or waiter, at a car wash, and at a cell phone store. *Id.* ¶ 57. He could not recall specific details of this employment. *Id.*

Between 2012 and 2013, Defendant performed work on cell towers for a company in Carlstadt, New Jersey. *Id.* ¶ 56.

From 2013 to 2017, Defendant worked on cell towers as a subcontractor, earning $6,000.00 per month. *Id.*

From 2017 to 2024, Defendant worked in numerous restaurants and as an independent vehicle repairman. *Id.*

From 2024 to 2025, Defendant was a full-time repair technician responsible for servicing dental chairs. *Id.* ¶ 54.

From March 2024 to the present, Defendant has maintained a 50% partnership interest in a company named Carousel Collision ("Carousel"). *Id.* ¶ 53. Carousel is an automotive body, paint, and interior repair and maintenance business Defendant runs alongside his partner Zimro Abayev. *Id.* Carousel has thirteen employees. *Id.* Documentation indicated Carousel earned over $1.5 million in gross income for 2024 with expenses totaling approximately $917,000.00. *Id.* Defendant reported a gross monthly income of $7,000.00 generated from Carousel. *Id.*

### 3. *Prior Convictions*

Defendant has no prior juvenile adjudications nor any adult criminal convictions. *See id.* ¶¶ 30–35.

### 4.    *Physical and Mental Health*

In 2010, Defendant broke his right heel after falling from the second floor of a home under construction, but has no residual issues related to this injury. *Id.* ¶ 46. On May 7, 2025, Defendant underwent an endoscopy which revealed his stomach lining was eroding due to an infection. *Id.* ¶ 45. In response, he reported being prescribed antibiotics to treat this issue. *Id.*

Otherwise, Defendant has no history of mental or emotional health conditions, and no history of treatment for such conditions. *Id.* ¶ 47.

### 5.    *Substance Abuse*

Defendant reported substance abuse issues stemming from his ankle injury in 2010. *See id.* ¶ 48; *see supra* Part III(A)(4). After his ankle injury, Defendant was prescribed Percocet to manage his pain. PSR ¶ 46. When his prescription ended, Defendant experienced withdrawal symptoms and began acquiring Percocet through other means. *Id.* ¶¶ 46, 48.

Defendant used Percocet until 2023 when he was arrested for the instant offense. *Id.* ¶ 48. He attended inpatient and outpatient treatment programs in Brooklyn, New York for an unrecalled period of time as well as narcotics anonymous.[4] *Id.* As a result of his treatment, Defendant's wife reports Defendant no longer suffers from a Percocet addiction. *Id.*

Otherwise, Defendant reports he does not consume alcohol and denied any additional substance abuse. *Id.* ¶ 50.

### 6.    *Nature and Circumstances of the Offense*

The Court's previous statements address the nature and circumstances surrounding the instant offense. *See supra* Part I.

---

[4] During a presentence interview, Defendant mentioned attending court-mandated treatment for twelve months in 2013 due to an arrest in Kings County, New York. PSR ¶ 49. However, Probation did not locate any arrests on Defendant's National Crime Information Center report. *Id.*

**B.     The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's conduct. Defendant engaged in a significant number of fraudulent odometer manipulations, causing an estimated $927,200 in losses. *See* PSR ¶ 8. Not only did Defendant cause financial harm, but he also threatened the safety of those who purchased tampered vehicles unaware of their true mileage and threatened other cars on the road. *See* Gov't Sent'g Mem. at 4. The Court's sentence will deter Defendant and others from engaging in similar conduct, justly punish Defendant for his crimes, and protect the public from Defendant's actions. Accordingly, the Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a).

**C.     The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3). Defendant pled guilty to one count of conspiracy to commit odometer fraud in violation of 49 U.S.C. § 32703(4). Plea ¶ 1.

Defendant faces a maximum term of three years' incarceration and no minimum term. 49 U.S.C. § 32709(b). Defendant also faces a maximum term of one year of supervised release. 18 U.S.C. §§ 3583(b)(3), 3559(a)(5). If a condition of release is violated, Defendant may be

sentenced to up to one year of incarceration without credit for pre-release incarceration or time previously served on post-release supervision. 18 U.S.C. §§ 3583(e). Defendant is eligible for a term of probation of one to five years. 18 U.S.C. § 3561(c)(1). Unless extraordinary circumstances exist, the Court must impose one of the following as a condition of probation: a fine, restitution, or period of community service. 18 U.S.C. § 3563(a)(2).

In addition to facing terms of incarceration and supervised release, Defendant faces a maximum fine of $250,000.00. 18 U.S.C. § 3571(b)(3). The Court is also required to impose a mandatory special assessment of $100.00 pursuant to 18 U.S.C. § 3013(a)(2)(A).

**D.      The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense**

The fourth § 3553(a) factor requires the Court to consider "the kinds of sentence and the sentencing range established for . . . [t]he applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

Defendant did not provide a specific Guidelines calculation in his sentencing memorandum. *See generally* Def. Sent'g Mem. Probation and the Government agree the applicable guideline in this case is U.S.S.G. § 2N3.1, which directs the Court by way of cross reference to U.S.S.G. § 2B1.1—the Guidelines provision for Theft, Property Destruction, and Fraud—when the offense "involved more than one vehicle." U.S.S.G. § 2N3.1(b)(1); PSR ¶ 19; Gov't Sent'g Mem. at 3. Defendant has a Base Offense Level of 6 per U.S.S.G. § 2B1.1. *See* § 2B1.1(a)(2); *see also* Plea ¶ 2.

Probation and the Government agree certain adjustments apply to Defendant's Base Offense Level. First, U.S.S.G. § 2B1.1(b)(1)(H) adds 14 levels because the total loss stemming from the offense, based on the Government's estimates and Defendant's plea agreement, was

11

greater than $550,000.00, but less than $1,500,000.00.  U.S.S.G. § 2B1.1(b)(1)(H); PSR ¶ 20; Gov't Sent'g Mem. at 3; Plea ¶ 2.

Second, U.S.S.G. § 2B1.1(b)(2)(A)(i) adds 2 levels because the offense involved ten or more victims.  U.S.S.G. § 2B1.1(b)(2)(A)(i); PSR ¶ 21; Gov't Sent'g Mem. at 3; *see also* Plea ¶ 2.

Finally, all parties agree certain reductions apply for Defendant's timely acceptance of responsibility under U.S.S.G. §§ 3E1.1(a)–(b) and because he is a Zero-Point Offender pursuant to U.S.S.G. § 4C1.1.  PSR ¶¶ 26–28; Gov't Sent'g Mem. at 3; Plea ¶ 2.  Namely, 3 levels are subtracted because Defendant demonstrated acceptance of responsibility for his offense and did so in a timely fashion.  Additionally, Defendant meets the criteria of U.S.S.G. § 4C1.1(a)(1)–(11), and so 2 levels are subtracted.  *See* U.S.S.G. § 4C1.1(a).  In sum, Defendant's Total Adjusted Offense Level is 17.  PSR ¶ 29; Gov't Sent'g Mem. at 3; Plea ¶ 2.

Defendant's Criminal History Category is I because he has no history of convictions.  *See* U.S.S.G. § 4A1.1; PSR ¶ 32; Gov't Sent'g Mem. at 3; *see also* Plea ¶ 2.  Although Defendant did not provide a specific Guidelines calculation, he agrees he "lack[s] [a] criminal record[.]" Def. Sent'g Mem. at 5.

Pursuant to the Guidelines Sentencing Table, a Total Adjusted Offense Level of 17 and a Criminal History Category of I results in a Guidelines range of twenty-four (24) to thirty (30) months' incarceration.

This Court appreciates the sentencing arguments raised by all parties and seriously considered each in turn.

### E.    Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). The parties have not drawn the Court's attention to any applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F.    The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defendant has raised certain considerations related to sentencing disparities. Namely, Defendant argues the Court should impose on him the same sentence as his co-defendant D. Nozadze. *See* Def. Sent'g Mem. at 4. Defendant states he and D. Nozadze "are similarly charged and alleged to have engaged in similar conduct for a similar amount of time." *Id.* The Government disagrees, noting D. Nozadze was responsible for fewer transactions and a smaller amount of harm. *See* Gov't Sent'g Mem. at 5.

For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G.    The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is not applicable in this case. 18 U.S.C. § 3663.

13

## IV.    Conclusion

For the reasons set forth above, the Court sentences Defendant to eighteen (18) months' incarceration; one (1) year of supervised release with both the standard conditions and special condition of supervision; and a $100.00 mandatory special assessment.  This sentence is sufficient, but not greater than necessary to accomplish the purposes of § 3553(a)(2).  The Court does not impose a fine given Defendant's present financial circumstances.

The Court expressly adopts the factual findings of the PSR, as corrected herein, to the extent those findings are not inconsistent with this opinion.  The Court advises Defendant he has fourteen (14) days to appeal the order and judgment of this court from the date the order and judgment are entered.

SO ORDERED.

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 18, 2026
       Brooklyn, New York

14